Filed 6/24/24  P. v. Wilson CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JOSHUA EDWARD WILSON,<br><br>  Defendant and Appellant. | F086073<br><br>(Super. Ct. No. DF016678A)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Monica McMillan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Levy, Acting P. J., Meehan, J. and DeSantos, J.

## INTRODUCTION

Joshua Edward Wilson, appellant, was convicted of two counts of battery by a prisoner on a nonprisoner and attempted aggravated battery by gassing, with three prior strike convictions. He appeals from a sentence of 11 years. Appellant argues a statement he made to a correctional officer was elicited in violation of *Miranda*,[1] that Penal Code section 654[2] should apply to two of his counts, and that his counsel was ineffective during sentencing for failing to argue the latter. The People concede section 654 applies to counts 1 and 3 of appellant's conviction, and we therefore vacate the sentence and remand the matter for resentencing. The judgment is otherwise affirmed.

## PROCEDURAL HISTORY

On April 8, 2022, the Kern County District Attorney filed an information charging appellant with two counts of battery by a prisoner on a nonprisoner (§ 4501.5; counts 1 & 2) and two counts of attempted aggravated battery by gassing (§§ 664, 4501.1; counts 3 & 4), with three prior strike convictions (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e)). The victim alleged in counts 1 and 3 was Cory Layshot, and the victim alleged in counts 2 and 4 was Stephanie T. The district attorney alleged three circumstances in aggravation as to each count.

On November 29, 2022, a jury convicted appellant of counts 1 through 3, and acquitted appellant on count 4. In a bifurcated proceeding, the trial court found true appellant's prior strikes and the alleged aggravating circumstances.

On February 2, 2023, the trial court granted appellant's *Romero*[3] motion and struck two prior strike convictions. The court sentenced appellant to the upper term of

---

**1**     *Miranda v. Arizona* (1966) 384 U.S. 436.

**2**     Statutory references are to the Penal Code.

**3**     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

four years, doubled, on count 1, a consecutive two-year term on count 2, and a consecutive one-year term on count 3, for an aggregate term of 11 years.

## STATEMENT OF FACTS

On June 26, 2021, Layshot, a correctional officer at Wasco State Prison in Kern County, was escorting appellant to a temporary holding cell. Appellant had just been involved in an altercation where he was battered by two other inmates and he was angry.

After Layshot placed appellant in the temporary holding cell and was securing the lock, he heard the sound of someone spitting, and saw saliva come from the cell. What Layshot described as a "good sized amount" of saliva landed on his pant leg. At trial, Layshot recreated the sound by pursing his lips and imitating a spitting noise.

Although Layshot did not see appellant spit the first time because he was focused on securing the lock to the holding cell, he did see appellant lean back and begin spitting several times afterward. Appellant spit toward Layshot and other staff, hitting psychiatric technician Stephanie as she was passing the holding cell. Spit landed on Stephanie's upper back and shoulder area. Stephanie testified that she was returning to her office after responding to an unrelated "code" out on the yard when spit flew out of the holding cell next to her office and landed on her shoulder.

Layshot retrieved a spit hood and opened the cell to secure it on appellant's head and face. Layshot and correctional officer Heriberto Aguauio then tried to secure the holding cell, but appellant stuck his foot out to keep the cell door from closing.

Correctional sergeant Matthew Moyes was charged with decontaminating appellant because appellant had been previously exposed to pepper spray grenades.[4] Appellant was evaluated by a nurse for injuries, Moyes conducted an unclothed body search, and appellant was offered a shower and new clothes. Appellant then asked if he

---

[4]     The record is unclear whether appellant was exposed to these grenades during the fight with the other inmates, or during the spitting incident.

was going back to the housing unit he was originally assigned to. Moyes responded that he was not, he was going to administrative segregation. Appellant asked why. Moyes said, "[W]ell, did you spit on an officer and a nurse?" Appellant responded, " 'Yeah. I f[***]ing spit on that cop and nurse, and I would do it again.' "

## DISCUSSION

### I.     Appellant's Statement Was Not Acquired in Violation of *Miranda*

Appellant argues his statement, that he " 'spit on that cop and nurse,' " was elicited in violation of *Miranda*. Appellant contends that he was in custody and the question posed by Moyes was an interrogation. Therefore, appellant concludes the trial court erroneously allowed the statement be admitted as evidence. We disagree, and find although appellant was in custody, the question by Moyes was not an interrogation; therefore, the statement was not procured in violation of *Miranda* and was properly admitted as evidence.

### A.  Background

During motions in limine, the prosecution sought to introduce appellant's statement to Moyes that appellant " 'spit on that cop and nurse.' " The prosecution acknowledged appellant had not been *Mirandized* but argued the conversation with Moyes was not an interrogation.

Appellant argued he was obviously in custody while being asked questions that would elicit an incriminating response, he was not *Mirandized*, and it was essentially an admission.

The trial court initially ruled:

> "It's an interesting statement as recited by [the prosecution] because the officer is initially responding I think to a question of, why are you taking me? Where are we going? And the officer is explaining to him—the explanation could have been, you have to go to [administrative segregation] because you spit on someone, and this one was, you have to go to [administrative segregation]. You spit on someone, didn't you? And,

4.

again, it's a response to the question, not so much an interrogation of the reason for the move, and that makes it an interesting one. So I'm going to take it under submission."

Subsequently, the trial court ruled:

"The Court does not find that that was an interrogation. The defendant was in custody at the time, was—essentially the officer was answering a question or making a point to the defendant rather than by declaration or simply by a question to the defendant to make a point to him based upon an issue that he had initiated, and, as such, I don't find it a custodial interrogation. It is admissible."

Following Moyes's testimony, the trial court added:

"On my ruling admitting the statement that just came in by this sergeant, I left something out in my ruling, and that came out in the cases [the prosecution] submitted to me.

"Going back on these cases—which some of the cases I think submitted were from the 60's from [the prosecution], both of the cases commented that the Supreme Court—California Supreme Court looked at the difference between custodial officers and investigative officers in the custodial setting. And part of my determination that the statement was admissible was that it was my view on the information presented to me that this was not part of an investigative interrogation of the defendant, but simply an administrator of custodial handling of the defendant of moving him after this particular incident. That plays into the Court's ruling.… I didn't articulate earlier, but as soon as he was testifying, I thought I should put that on the record rather than hide that factor."

## B. Legal Standard

Pursuant to *Miranda*, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda v. Arizona*, *supra*, 384 U.S. at p. 444.)

In defining an "interrogation," the United States Supreme Court has said,

> "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301–302; fns. omitted.)

"Not every question directed by an officer to a person in custody amounts to an 'interrogation' requiring *Miranda* warnings. The standard is whether 'under all the circumstances involved in a given case, the questions are "reasonably likely to elicit an incriminating response from the suspect." ' [Citation.] This is an objective standard. 'The subjective intent of the [officer] is relevant but not conclusive. [Citation.] The relationship of the question asked to the crime suspected is highly relevant. [Citation.]' " (*People v. Wader* (1993) 5 Cal.4th 610, 637.)

On review of the trial court's ruling, " 'we accept the trial court's resolution of disputed facts and inferences, and its evaluations of credibility, if supported by substantial evidence. We independently determine from the undisputed facts and the facts properly found by the trial court whether the challenged statement was illegally obtained. [Citations.]' " (*People v. Case* (2018) 5 Cal.5th 1, 20.)

**C. Analysis**

Appellant argues Moyes's question was not a neutral inquiry, but a direct question reasonably likely to elicit an incriminating response. Appellant contends he had not initiated any conversation or questioning about whether he had committed the suspected offense, and Moyes had pivoted the conversation in that direction.

The People argue, in turn, that Moyes's question was rhetorical. The trial court appears to have interpreted Moyes's question in a similar manner. The court commented Moyes could have responded, "[Y]ou have to go to [administrative segregation] because you spit on someone," as well as "[Y]ou have to go to [administrative segregation]. You spit on someone, didn't you?" If Moyes's response was not an inquiry, it necessarily would not be reasonably likely to elicit an incriminating response since it was not intended to elicit any response at all. However, whether or not Moyes's question was rhetorical is not dispositive in this case, because even if it was an inquiry, not every question by a custodial officer amounts to an interrogation. (*People v. Wader*, *supra*, 5 Cal.4th at p. 637.)

In *People v. Morse* (1969) 70 Cal.2d 711 (*Morse*), a jail deputy was engaged in unrelated duties when he passed by the defendant's cell and saw the defendant's cellmate garroted by a woven chord. (*Id*. at p. 720.) The deputy called for assistance, and while he and another officer attempted to revive the cellmate, the deputy spoke with the defendant as the defendant was lying on his bed. (*Ibid*.) The deputy asked, " 'Joe, did you do this?' " The defendant nodded his head in the affirmative and said, " 'Yeah.' " The deputy asked, " 'Why?' " and the defendant replied, "The sonofab[**]ch wouldn't pay his debts.' " The deputy asked, " 'What did he owe you?' " The defendant immediately answered, " 'Cigarettes.' " (*Ibid*.)

The Supreme Court found no *Miranda* violation. The court concluded,

"[T]he conversational episode took place in a time period of perhaps a few seconds and in a setting devoid of 'inquisitorial techniques.' [The deputy,] although a uniformed deputy sheriff, was in fact a jailer whose duties at the time were custodial, not investigative. He was not specifically assigned to [the] defendant or to [the] defendant's cell block, having been on duty on the floor below and having volunteered to bring medicine to another prisoner on the fifth floor. We note that here, while [the] defendant was in custody in the general sense in which all prisoners are deemed to be in custody, he was not yet in custody for the particular offense. The general atmosphere of the setting discloses a preoccupation on the officers' part with reviving the victim rather than with interrogating a suspect. [The deputy] and his companion were kneeling by [the victim's] body outside [the] defendant's locked cell; [the] defendant was not in face-to-face conversation with them but lying on his bunk. The questions were put to him by [the deputy] while the latter was desperately attempting to resuscitate the victim and were couched in a context of stupefied wonderment, not of incisive inquiry. The answers were offered immediately—one gets the impression almost laconically—without any pressure from the questioner. We cannot detect in such an exchange any of the marks of an accusatory process. We are satisfied that no process of interrogation had been undertaken." (*Morse*, *supra*, 70 Cal.2d at pp. 723–724.)

In *People v. Quicke* (1969) 71 Cal.2d. 502 (*Quicke*), officers discovered the defendant on top of the deceased victim in the back of a car. (*Id*. at p. 510.) The officers handcuffed the defendant and placed him in the back seat of their patrol car. An officer asked the defendant if he knew the victim was dead, and the defendant said, " 'Yes, for the last two hours I have known it.' " (*Ibid*.) The officer then asked if the defendant wanted to tell him what happened, and the defendant said yes, and confessed to killing the victim. (*Id*. at pp. 510–511.)

In determining whether the defendant's confession was elicited in violation of *Miranda*, the Supreme Court considered " 'the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and

time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.' "[5] (*Quicke*, *supra*, 71 Cal.2d at p. 513.)

The court found "the 'time of the interrogation' was the moment of the discovery of the murder and coincident with the arrest of [the] defendant. The 'place' of the interrogation was the scene of the rape, not police headquarters or remote from the discovery of the murder and the immediate investigation of it. As to the 'nature of the questions,' the record discloses only the preliminary question of the officer as to 'what had happened.' We do not find a long series of probing queries which were designed to elicit incriminating statements. The 'length of the interrogation' was comparatively short; it consisted almost entirely of a narration of the defendant." (*Quicke*, *supra*, 71 Cal.2d at pp. 513–514.)

The Supreme Court concluded "this confession did not arise 'from the use of inquisitorial techniques in seeking to prove the charge against the accused out of his own mouth' [citation], but rather because 'defendant volunteered immediately after his arrest to tell the police "what happened," and proceeded to do so without solicitation by the officer present.' " (*Quicke*, *supra*, 71 Cal.2d at p. 514.)

Much like the deputy in *Morse*, in this case Moyes was aiding appellant to decontaminate from a pepper spray grenade and was escorting him to administrative segregation when appellant struck up the conversation at issue. Moyes's duties at the time were custodial, not investigative. Likewise, appellant was in custody, but not yet in custody for the particular offense of spitting at Layshot and Stephanie.

And while there was no ongoing medical emergency like in *Morse*, the atmosphere of the setting in this case was not one of "incisive inquiry." (*Morse*, *supra*, 70 Cal.2d at p. 724.) Appellant started and continued the conversation with Moyes while being

---

[5] The court noted that the defendant was clearly in custody. (*Quicke*, *supra*, 71 Cal.2d at p. 513.)

escorted to administrative segregation, and when Moyes asked appellant whether he spat on the officer and nurse, appellant offered an immediate and verbose response without any further pressure from Moyes.

Finally, much like in *Quicke*, there was no series of probing queries which were designed to elicit incriminating statements—the length of the "interrogation" was incredibly short. (*Quicke*, *supra*, 71 Cal.2d at pp. 513–514.) In fact, it was a single question. In *Morse*, the deputy asked three questions, and in *Quicke*, the officer asked two. (*Morse*, *supra*, 70 Cal.2d at p. 720; *Quicke*, *supra*, 71 Cal.2d at pp. 510–511.) The questions in *Morse* were also much more incriminating—the deputy not only asked the defendant whether he killed the cellmate but followed up by eliciting details about the defendant's motive. (*Morse*, *supra*, 70 Cal.2d at p. 720.) Nonetheless, the questions in *Morse* were deemed not an interrogation.

In whole, we conclude Moyes's question did not amount to an interrogation for purposes of *Miranda*, and the trial court properly admitted appellant's statement that he " 'spit on that cop and nurse' " as evidence.

## II.     Section 654 Applies to Either Count 1 or Count 3

Appellant argues that counts 1 and 3 comprise an indivisible course of conduct and therefore are subject to section 654's proscription against double punishment. The People concede that section 654 applies to either count 1 or count 3. We therefore vacate appellant's sentence and remand the matter for resentencing.

Section 654 provides in relevant part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

" 'Section 654 does not preclude multiple convictions but only multiple punishments for a single act or indivisible course of conduct. [Citation.]' 'The

proscription against double punishment in section 654 is applicable where there is a course of conduct which … comprises an indivisible transaction punishable under more than one statute …. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)

Appellant was convicted of count 1, battery by a prisoner on a nonprisoner, and count 3, attempted aggravated battery by gassing. Both counts arose from appellant spitting multiple times on or at Layshot. As noted by both appellant and the People, while appellant engaged in multiple acts of spitting, the evidence shows the offenses were incident to one intent and objective, to spit on Layshot, with no intervening circumstances. Therefore, section 654 prohibits appellant from being punished for both counts 1 and 3.

Because we find section 654 applies, vacate appellant's sentence, and remand the matter for resentencing, we need not address appellant's ineffective assistance of counsel during sentencing claim.

## DISPOSITION

The sentence is vacated and the case remanded for a full resentencing, with direction that the trial court stay the sentence on count 1 or count 3 pursuant to section 654, subdivision (a). The judgment is otherwise affirmed.

11.